CHADWELL *v.* CHADWELL.

(*Knoxville.* September 19, 1893.)

BOUNDARY. *Estoppel as to.*

A land-owner and his heir are estopped to dispute the correctness of a boundary line established by the former and assèrted or acquiesced in by both for a period of thirteen years, during which the adjoining lands have been purchased to and upon faith of that line, especially where the line has been established in conformity to the more reasonable construction of the conflicting calls of the title-papers of the adjacent owners.

Cases cited and approved: Spears *v.* Walker, 1 Head, 165; Merriwether *v.* Larmon, 3 Sneed, 447.

FROM CAMPBELL.

Appeal from Chancery Court of Campbell County. H. R. GIBSON, Ch.

SCHLOSSHAN & AGEE and JAMES A. FOWLER for Complainants.

HENDERSON & JOUROLMON for Respondents.

WILKES, J. The controversy in this case involves the ownership and true boundaries of a tract of land in Campbell County. The land is embraced within what is known in the record as the Alvis Kincaid five thousand acre survey.

Prior to February 24, 1862, Kincaid, for a consideration of twelve dollars, conveyed to Sterling Rutherford a portion of this five thousand acre tract by the following boundaries: "Beginning on the top of Peter Huddlestone's ridge, where the Buck Gravely line crosses the same; then with the top of the Log Mountain, a north-east course to Cooper's line; thence with Cooper's line, crossing Davis Creek, to Gravely's line on the side of the Brushy Mountain; thence with Gravely's line to the beginning, containing one hundred acres, more or less."

On March 15, 1868, Rutherford conveyed to Clepper a portion of this tract by general boundaries, as follows: "Beginning on top of Peter Huddleston's ridge, where Buck Gravely's line crosses the same; thence with the top of Log Mountain to a locust and oak, near a gap in the Log Mountain; thence a north-west course, crossing Davis Creek, to a chestnut and black gum on the bank of the creek; thence a north-west course to the Gravely line on the side of Brushy Mountain; thence with Gravely's line to the beginning, containing twenty-five acres, more or less." This tract contains, however, by actual survey, 350 acres.

On March 15, 1871, Rutherford conveyed to I. R. Dew the remainder of the tract which had been conveyed to him by Kincaid, lying east of that portion deeded to Clepper, and the metes and bounds are set out in this conveyance.

In October, 1871, Dew conveyed the same land

to Wm. Allen, and Allen conveyed the same to the Big Creek Gap Coal and Iron Company on March 14, 1889.

In the meantime, September 5, 1870, Kincaid conveyed to Duff Chadwell all of the five thousand acre tract that he had not previously conveyed to Rutherford, or other parties.

The contest arises over the lands now claimed by the Big Creek Gap Coal and Iron Company, and turns upon the question whether these lands are included in the boundaries of the land conveyed to Rutherford, or whether they are a part of the residue of the five thousand acre tract which passed under the conveyance to Duff Chadwell.

The Chancellor held:

*First.*—That the lands belonged to the company.

*Second.*—That the calls of the deed from Kincaid to Rutherford ran with the top of Log Mountain in a north-easterly direction, as indicated on a map filed in the record, and not in a north-west direction, as contended by complainants, and these calls include the lands in controversy.

*Third.*—That Duff Chadwell and Rutherford agreed upon and fixed a line running from the beginning corner, north 45 east 700 poles, as the boundary line of the Rutherford tract, and that Chadwell recognized this line as correct for a long number of years, and that it has been so recognized by complainants until recently, before the bringing of this suit, and that complainants are now estopped to dispute the line thus established.

*Fourth.*—That complainants had wholly failed to show any actual inclosures and adverse possession of any of the lands in controversy.

Complainants' bill, so far as it raised the question of the title to this land, was dismissed, and complainants have appealed and assigned errors.

The first error assigned raises the question as to what is meant by the first call in the Rutherford deed, to wit: " Running then with the top of Log Mountain a north-east course to Cooper's line," etc. There is no dispute about the exact location of the beginning corner, but complainants insist that the line runs from this beginning corner along the top of Huddleston's ridge to what they term Log Mountain proper; thence with the top of Log Mountain proper to Cooper's line, and that this carries the line at first in a north-east direction, but afterwards in a north-west direction. It is conceded that the line thus run would embrace an area of about four hundred and fifty acres, instead of one hundred, as the Rutherford deed calls for, and, thus run, would be virtually the same as the calls of the deed to Clepper.

Defendants insist, on the contrary, that the line continues in a north-east direction until it strikes Cooper's line at a different point; and it is shown that the area contained in the lines thus run would be about one thousand to one thousand two hundred acres. In corroboration of their contention, complainants insist that by the description given in the Rutherford deed, the land lies on Davis

Creek, and that, if the boundaries are as claimed by defendants, then the lands lie on Hog Camp Branch and Patty Murray Branch, two streams of considerable importance, and too well known to be overlooked in the description of the land; but defendants insist that these two branches are but tributaries of Davis Creek, and there is no misdescription or confusion in the location calls.

The main contention arises over what is "Log Mountain." Complainants' claim is that it is a ridge which runs down in a north-westerly direction to Davis Creek, according to the calls of the Clepper deed, while defendants say that this is only a spur of Log Mountain, and that the mountain proper runs in a north-east direction from the beginning corner. By either contention Peter Huddleston's ridge is a part or section of Log Mountain, and the beginning corner is agreed upon, and not in dispute.

The Chancellor held that the line ran north-east along the top of the mountain, as insisted by defendants, and not north-west along the spur, as contended by complainants; and, while there is some contradiction and uncertainty in the testimony, we are of opinion he was correct in so holding.

The second error assigned is to the holding of the Court that Duff Chadwell, the ancestor of complainants, and through whom they derive title by descent, agreed with Rutherford upon a conventional line, and established the same in 1871, and afterwards recognized the same.

We think the evidence is quite plain that when Rutherford was offering this land for sale to Dew in 1871, it was done in the presence of Duff Chadwell, and that Rutherford indicated its location by pointing in the direction of the lands in dispute, and that Chadwell not only did not raise any question, but agreed to and conceded its correctness.

Dew, however, desired to have the lands surveyed, and conveyed to him by metes and bounds; and thereupon, John B. Chadwell, son of Duff Chadwell, and one of the principal complainants in this cause, was employed to survey the lands and ascertain the boundaries.

John B. Chadwell, it seems, was Deputy County Surveyor at the time, and was selected in preference over the County Surveyor to do the work by the several parties interested. He made the survey. Both Rutherford and Duff Chadwell were present, and a controversy arose between them over the direction of the first line, Rutherford insisting that it should run in a south-easterly direction, but on the top of Log Mountain, while Chadwell insisted that, inasmuch as the call was north-east, it should be run north 45 east, which would make a straight line, sometimes running with the top and sometimes on the side of the mountain near the top. Chadwell prevailed in his contention, and the line was run at 45 east, and Duff Chadwell, for a great portion, if not the entire length of the line, marked it plainly through the woods with a hatchet in his own hands. The line

Chadwell *v.* Chadwell.

of the survey was thus fixed and marked, and by it the deed was made from Rutherford to Dew and from Dew to Allen and from Allen to the Big Creek Coal and Iron Company, and for thirteen years Duff Chadwell recognized it as the boundary, and recognized the land as the land of Allen. We think, from the proof, that complainants, up to within a short time of the filing of this bill, also recognized this as the correct or established line.

This line having been established by Chadwell himself, against the contention of Rutherford, and Dew having bought with reference to it, complainants, as the heirs of Chadwell, are now estopped to deny it. *Spears* v. *Walker*, 1 Head, 165; *Merriwether* v. *Lannon*, 3 Sneed, 347, and other cases in accord.

We do not think the contention of complainants, that any portion of the land claimed by the Big Creek Coal and Iron Company was adversely held by them or any one else as against the Rutherford and Dew title, is sustained by the record.

We conclude that there is no error in the decree of the Chancellor, and the supplemental bill, which raises the question of title as to this land, is dismissed at complainants' cost, and the cause is remanded to the Court below for such further proceedings under the original partition bill as the parties desire to take with reference to the lands other than those decreed to the Big Creek Coal and Iron Company.